**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Khima Oli,

Petitioner,

v.

Pamela Bondi, et al.,

Respondents.

No. CV-26-02102-PHX-SHR (JFM)

**ORDER**

Petitioner, proceeding pro se, filed this action under 28 U.S.C. § 2241 challenging her immigration detention. She contends her prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (Doc. 1.) Magistrate Judge James F. Metcalf issued a Report and Recommendation ("R&R") recommending the Court deny the Petition, concluding Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and cannot challenge the length of that detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), or the Due Process Clause of the Fifth Amendment. (Doc. 14 at 5, 7–8.) Petitioner filed an Objection to the Magistrate Judge's R&R (Doc. 15). Respondents have not filed a response to Petitioner's Objection. For the following reasons, the Court will adopt the R&R.

## I. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." *Id.*

## II. Background

As set forth in the R&R, Petitioner is a native and citizen of Nepal. (Doc. 1 ¶ 11.) Petitioner entered the United States seeking asylum on December 9, 2024, and was immediately apprehended by immigration officials. (*Id.*) On August 22, 2025, Petitioner was ordered removed from the United States. (*Id.* ¶ 13.) Petitioner appealed the removal decision to the Board of Immigration Appeals (BIA), and her appeal remains pending. (*Id.*) As of the date of this Order, Petitioner has been detained for over 20 months.

On March 27, 2026, Petitioner filed the instant Petition asserting, as an arriving alien, she is "entitled to a constitutionally protected due process right against unreasonably prolonged detention." (Doc. 1 at 5.) She seeks a writ of habeas corpus directing Respondents to immediately release her from custody or ordering Respondents to hold a hearing before an immigration judge regarding her continued detention. (*Id.* at 26.) Petitioner argues "there is no end in sight" to her detention, and, despite the lengthy detention she has already been subjected to, "the government has never made any individualized determination as to whether her detention is necessary due to dangerousness or flight risk." (*Id.* at 15.) Respondents contend there is no due process violation because Petitioner is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process. (Doc. 10.)

## III. Discussion

Petitioner is detained under § 1225(b)(1)(B)(ii), which provides an alien placed in expedited removal proceedings who expresses a credible fear of persecution "shall be detained for further consideration of the application for asylum." (*See* Doc. 1 at 4; Doc. 10 at 2.) The statute therefore mandates Petitioner's detention while the specified proceedings remain pending.

Petitioner's claim here is constitutional rather than statutory. She does not contend § 1225(b) itself entitles her to release or an individualized bond hearing; indeed, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), forecloses such a construction of the statute. Instead,

Petitioner contends, notwithstanding § 1225(b)'s mandatory-detention requirement, the Due Process Clause independently prohibits her continued detention after it becomes unreasonably prolonged unless the government establishes an individualized justification for such detention.

Whether Petitioner's claim is characterized as involving substantive or procedural due process does not alter the threshold question before the Court: whether the Due Process Clause confers Petitioner her asserted constitutional entitlement in the first place. Only if Petitioner possesses a constitutional right to an individualized determination of the necessity of continued detention would the Court need to determine what procedures are constitutionally required to protect that right—for example, whether *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires a bond hearing or immediate release. For the reasons explained below, the Court concludes, on Petitioner's threshold-of-entry circumstances and the present record, the duration of Petitioner's detention under § 1225(b) does not itself establish a constitutional entitlement to immediate release or an individualized bond hearing. Given the Court's conclusion, it need not determine what procedures would be required at a constitutionally compelled bond hearing.

**A. Statutory Detention and *Zadvydas***

As the Supreme Court explained in *Jennings*, § 1225(b)(1) "mandate[s] detention of applicants for admission until certain proceedings have concluded" and "says [nothing] whatsoever about bond hearings." 583 U.S. at 297. Congress instead provided a separate mechanism by which a noncitizen detained under § 1225(b) may obtain release: temporary parole under 8 U.S.C. § 1182(d)(5)(A), when the Secretary of Homeland Security determines release is warranted "for urgent humanitarian reasons or significant public benefit." Thus, the statutory scheme reflects Congress's determination that detention—not individualized bond adjudication—is the rule for persons detained pursuant to § 1225(b). Section 1225(b) does not make dangerousness or flight risk a prerequisite to detention. Requiring an immigration judge to determine whether continued detention is justified by dangerousness or flight risk would introduce an individualized determination Congress did

not make relevant to the statutory authority mandating detention.

*Zadvydas* does not require a different result. In *Zadvydas*, the Supreme Court recognized "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause and concluded potentially indefinite immigration detention raised sufficiently serious constitutional concerns to require a limiting construction of 8 U.S.C. § 1231(a)(6), which governs detention after entry of a final removal order. 533 U.S. at 689–99. The Court held § 1231(a)(6) permits detention only for the period reasonably necessary to effectuate removal and recognized six months as a presumptively reasonable period. *Id.* at 699–701. The concern in *Zadvydas* was potentially indefinite post-removal-order detention when removal was no longer reasonably foreseeable.

*Zadvydas* does not establish every form of prolonged immigration detention presents the same due-process concerns presented in § 1231 detentions, nor does it create a general six-month constitutional limit applicable to detention under § 1225(b). Unlike in *Zadvydas*, the detention authorized by § 1225(b) lasts only until specified events occur—namely, resolution of the removal proceedings. The Supreme Court itself distinguished the admitted aliens at issue in *Zadvydas* from aliens seeking initial admission, such as Petitioner, whose detention presents "a very different question." 533 U.S. at 682.

**B. Applicant-for-Admission Status**

Petitioner's status as an applicant for admission is significant. Petitioner is not detained under § 1231(a)(6). Her removal proceedings are still pending, and § 1225(b) mandates detention until those proceedings are resolved. In *Department of Homeland Security v. Thuraissigiam*, the Supreme Court reiterated an alien seeking initial admission "has only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 140 (2020). It also explained, albeit in the context of admissions rather than prolonged detention, decisions of executive or administrative officials exercising congressionally conferred authority constitute due process of law. *Id.* at 139.

*Thuraissigiam* did not involve a prolonged-detention claim or determine whether

every as-applied constitutional challenge to detention under § 1225(b) necessarily fails. But its treatment of the limited procedural rights associated with initial admission counsels against inferring a constitutional right to the particular procedure Petitioner seeks where Congress mandated detention and selected parole, rather than bond adjudication, as the mechanism for discretionary release.

The entry-fiction doctrine is relevant for the same reason. Petitioner argues the doctrine applies to admission but not to an as-applied challenge to the duration of detention. The Court disagrees. In *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215–16 (1953), the Supreme Court held an alien detained at Ellis Island for more than three years had no constitutional right to release on bond because he was "treated as if stopped at the border." As the Ninth Circuit has explained, *Mezei* necessarily determined the legality of the petitioner's detention as well as the petitioner's continued exclusion. *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1449–50 (9th Cir. 1995) (en banc) ("[W]hile the Court spoke in terms of exclusion, its holding necessarily included a determination that Mezei's *detention* was legal as well.") (citation omitted). Thus, Petitioner's detention under § 1225(b) is part of the congressionally prescribed process governing her application for admission rather than a restraint detached from that process.

The Ninth Circuit's recent decision in *Padilla v. U.S. Immigration & Customs Enforcement*, No. 24-2801, ___ F.4th ___, 2026 WL 2822044 (9th Cir. Sept. 21, 2026), does not compel a different result. *Padilla* rejected the proposition a noncitizen's detention under § 1225(b)(1)(B)(ii), standing alone, categorically forecloses any procedural-due-process protection beyond that provided by statute. But *Padilla* did not decide whether prolonged detention under § 1225(b)(1)(B)(ii) requires a bond hearing. Nor did it displace *Thuraissigiam* as to noncitizens who remain at the threshold of initial entry. To the contrary, *Padilla* recognized the entry-fiction framework has continued to apply to noncitizens apprehended immediately after entry, while holding only the broad class before it included persons apprehended "far beyond the threshold of entry covered by *Thuraissigiam*." *See Padilla*, 2026 WL 2822044, at *15.

**C. *Ibarra-Perez* and Split Authority**

In *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156 (D. Ariz. 2020), this Court rejected a substantially similar claim by a petitioner detained under § 1225(b) who sought a custody-redetermination hearing based on the length of detention. After considering Supreme Court and Ninth Circuit authority, the Court concluded the relevant precedent "suggests it is constitutionally permissible to require" detention while an asylum or removal proceeding remains pending. *Id.* at 1160–76. In reaching this conclusion, the Court recognized other district court cases within the Ninth Circuit, including *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), had required bond hearings after prolonged § 1225(b) detention as a matter of due process. *Ibarra-Perez*, 468 F. Supp. 3d at 1177. It declined to follow the reasoning in those cases because they did not discuss relevant legal authority, including *Barrera-Echavarria* and the entry-fiction doctrine. *Id.* at 1177 n.25.

The Court recognizes district courts have reached differing conclusions as to whether prolonged detention under § 1225(b) eventually requires an individualized bond hearing as a matter of procedural due process.[1] *Compare Banda*, 385 F. Supp. 3d at 1116–20 (applying a multi-factor test to evaluate reasonableness of detention and concluding unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process), *with Ibarra-Perez*, 468 F. Supp. 3d at 1176–77 (rejecting constitutional entitlement to custody-redetermination hearing while removal proceedings remain

---

[1] The undersigned has previously granted bond hearings to petitioners detained under § 1225(b), but those matters are distinguishable because the government did not oppose the requested hearing or object to the R&R. *See, e.g.*, *Anarbek v. Figueroa*, 2:26-CV-01045-SHR, Docs. 13, 14 (D. Ariz. May 18, 2026) (granting petition to the extent it sought a bond redetermination hearing where respondents expressly stated they did not oppose petitioner's request); *Soltanbakhsh v. Bondi*, No. CV-26-01572-PHX-SHR (JZB), 2026 WL 1511764, at *1 (D. Ariz. May 29, 2026) (adopting an unobjected-to R&R recommending the Court find the petitioner was entitled to a bond hearing under the Due Process Clause). In those cases, the Court did not resolve any contested issues after adversarial briefing or adopt a rule governing prolonged-detention challenges under § 1225(b).

pending).

Having considered Petitioner's Objection and the relevant authorities addressing the issue, the Court elects to follow the reasoning set forth in *Ibarra-Perez*. Unlike the decisions applying the reasoning in *Banda*, *Ibarra-Perez* engaged in a persuasive historical and legal analysis addressing *Barrera-Echavarria* and the entry-fiction doctrine. And, for the reasons explained above, *Zadvydas* does not control because it concerned potentially indefinite post-removal-order detention under § 1231(a)(6) rather than detention under § 1225(b) while removal proceedings remain pending.

The Court is mindful of the limitations of the relevant precedent. *Jennings* addressed the statutory question without reaching the constitutional issue, and *Thuraissigiam* did not involve prolonged detention. The Court does not foreclose the possibility that, in an appropriate case, prolonged detention under § 1225(b) may support a viable as-applied due-process claim. *See Padilla*, 2026 WL 2822044, at *15. Instead, the Court's conclusion is limited to Petitioner's asserted entitlement on the facts and record presented and does not rest on Petitioner's detention under § 1225(b) alone. Rather, it rests on Petitioner's initial-entry circumstances, Congress's mandatory-detention scheme and the limited parole mechanism it supplied, and the fact Petitioner's detention remains connected to the resolution of her pending removal proceedings. The Court does not minimize the significance of Petitioner's approximately twenty months of civil detention. Her proceedings nevertheless remain pending due to her decision to appeal the immigration judge's removal order. On this record, the duration of detention does not itself establish a constitutional entitlement to an individualized bond hearing or immediate release. *See Ibarra-Perez*, 468 F. Supp. 3d at 1177; *Nurbekov v. Rivas*, No. CV-25-04353-PHX-DWL, 2026 WL 1295573, at *1 (D. Ariz. May 12, 2026); *Mamedova v. Noem*, No. CV-25-04619-PHX-DWL, 2026 WL 1162282, at *3 (D. Ariz. Apr. 29, 2026); *Savin v. Rivas*, No. CV-26-01120-PHX-DWL, 2026 WL 1162384, at *3 (D. Ariz. Apr. 29, 2026). Accordingly,

Petitioner has not shown her continued detention violates due process.[2] The Court will adopt the R&R and deny the Petition.

## IV. Conclusion

**IT IS ORDERED** the Court **ADOPTS** the R&R (Doc. 14).

**IT IS FURTHER ORDERED** Petitioner's Petition (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment accordingly and close this case.

Dated this 23rd day of September, 2026.

Honorable Scott H. Rash
United States District Judge

---

[2] This result is not inconsistent with the Ninth Circuit's recent opinion in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). There, in distinguishing detention under § 1225 from detention under § 1226, the court noted, "Unlike with detention under § 1226, detention under both § 1225(b)(1) and (2) is mandatory and affords no opportunity for release on bond." *Id.* at 1169. While the government may grant temporary parole to aliens subject to § 1225(b)(2)(A), it may do so "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* (quoting § 1182(d)(5)(A)).